UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. DOLAN

       Plaintiff,                CIVIL ACTION NO. 05-CV-74708-DT

   vs.                             DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 22), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket ## 11, 15, 25), and that Plaintiff's Complaint be **DISMISSED**.

II. **SUMMARY OF ISSUE ON APPEAL**

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for waiver of overpaid benefits. This issue for review is whether substantial evidence supports the Commissioner's decision.

III. **PROCEDURAL AND FACTUAL HISTORY**

Plaintiff Michael Dolan has a degree in mechanical engineering and had previously worked as an engineer. Plaintiff was involved in a motor vehicle accident in 1989 caused by a

drunk driver. He sustained a closed head injury and remained comatose for 2 ½ months. Plaintiff's daughter was also in the vehicle at the time of the accident. Plaintiff applied for and was subsequently awarded Disability Insurance Benefits ("DIB"). (Tr. 38, 194, 220, 225, 227). Plaintiff's wife and daughter also became eligible for benefits at this time. (Tr. 147). Plaintiff's daughter ultimately received a financial settlement related to the accident. (Tr. 227).

Plaintiff returned to work as an engineer in May 1993 until he was laid off in December 1993. (Tr. 40, 194). Plaintiff thereafter worked as an engineer for Hawtal- Whiting, Inc. starting in June or July 1994. *Id.* July 1994 constituted Plaintiff's ninth and last month of a trial work period ("TWP") and therefore Plaintiff's 36 month of extended period of eligibility ("EPE") began on August 1994.[1] (Tr. 23, 27). During this time period, Plaintiff and his wife and daughter continued to receive disability checks even though Plaintiff was engaged in SGA. (Tr. 195-96).[2] Plaintiff was subsequently laid off on July 31, 1996, at which point he had used 24 months of his EPE. (Tr. 23, 40, 194).

---

[1] *See* 42 U.S.C. § 422(c) (a TWP provides a 9-month period, which need not be consecutive, during which social security beneficiaries may try out their ability to work by working in substantial gainful employment while still receiving their benefits); 42 U.S.C. § 423(e); 20 C.F.R. § 404.1592a (an EPE is an additional three year period after the TWP in which the beneficiary may work without having his benefits terminated completely; benefits are not paid during months in which SGA occurs).

[2] Plaintiff and his wife kept Defendant apprised of Plaintiff's work activity during this time period. Plaintiff's wife also sent a letter to Defendant in January 1997 indicating that Plaintiff had been working at the same job for the past year making more than $500 and that they should not be receiving the checks. (Tr. 40-67, 145, 199). In April 1997 Defendant sent a letter to Plaintiff via Plaintiff's wife indicating that Defendant was not entitled to benefits beginning in November 1996 due to his SGA. (Tr. 32).

Plaintiff remained unemployed until November 1996 during which time his DIB was reinstated. (Tr. 27). Plaintiff was re-hired by Hawtal-Whiting in November 1996. (Tr. 40, 194). He continued working for Hawtal-Whiting during which time Plaintiff used the remaining 12 months of his EPE. (Tr. 34, 28). Plaintiff was again laid off in October 1997. (Tr. 40, 194). Plaintiff and his family continued to receive disability benefits while Plaintiff worked at Hawtal-Whiting despite his SGA and the termination of his EPE. (Tr. 146, 196).

Meanwhile, a continuing disability review took place in January 1997 and it was determined that Plaintiff had shown medical improvement in his ability to perform work-related activities. Consequently, Plaintiff's entitlement to DIB ended in March 1997. (Tr. 28-31, 38-39). However, a medical cessation notation was never entered into Defendant's computer system. (Tr. 147).

Plaintiff returned to work as an engineer for Aeroteck Automotive in January 1998. (Tr. 194). Defendant resumed sending DIB checks to Plaintiff and his wife and daughter in May 1998 because the medical cessation information had not been entered into the computer. (Tr. 147).

In May 1999 Defendant sent a letter to Plaintiff notifying him that he was not entitled to DIB any longer and that a review of their records indicated that Plaintiff had been engaged in SGA since August 1994 and that his benefits had terminated in August 1997 when his EPE ended. (Tr. 89-91).

Plaintiff was thereafter notified in September 1999 that he had incurred an overpayment of $45,768 and that his wife and daughter had been overpaid $22,868. These amounts reflected payments made to Plaintiff and his wife and child from November 1994 through July 1996 and November 1996 through March 1997 when Plaintiff had been engaged in SGA and from May 1998 to May 1999 during which time his benefits had been terminated due to medical improvement. (Tr. 92-99, 146-47).

Plaintiff appeared before Defendant's representatives in January 2003 to contest the overpayments. (146-47). Plaintiff reported that his claim representative, Mrs. Schultz, had agreed to waive the entire overpayment in October 1999. However, no records were found to confirm this report. (Tr. 147).

Subsequently, Defendant agreed to waive a portion of the overpayment. Specifically, Defendant waived the overpayment of DIB made between May 1998 and May 1999 to Plaintiff and his wife, finding that they were without fault because the medical cessation information had not been properly recorded, they had not received notice of the cessation, and that they would be financially burdened if required to repay based upon a financial statement submitted by Plaintiff in April 2002. Defendant did not waive the overpayment made to Plaintiff's daughter during this time period because she had approximately $22,666 in her account from a financial settlement from the accident, which Plaintiff had reinvested into stocks and bonds. Therefore, it was determined that Plaintiff's daughter had an ability to repay her overpayment. Defendant also did not waive any portion of the overpayment made from November 1994 through

November 1997, finding that Plaintiff and his wife and daughter were not without fault. The outstanding balance of the overpayment was $ 26,380 for Plaintiff, $ 5,995 for Plaintiff's wife, and $ 11,434 for Plaintiff's daughter. (Tr. 147-54).

Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 190-93). A hearing was held before ALJ Melvyn B. Kalt on June 25, 2004. (Tr. 217-230). Plaintiff was represented by an attorney and Plaintiff testified before the ALJ. Plaintiff testified that since his automobile accident, he had returned to work on a number of occasions. *Id.* He stated that he worked with a social worker by the name of Mrs. P. Schultz. Mrs. Schultz told him that he was able to work these jobs for 9 months before it would affect his social security benefits. (Tr. 221). Plaintiff testified that every time he started a new job, he would report it to the Social Security office within a day or so. *Id.* He also stated that he was told by Mrs. Schultz that she personally had waived the overpayment in its entirety although he did not have any documentation confirming this waiver. (Tr. 223).

The ALJ also asked Plaintiff about his ability to repay. Plaintiff testified that he could not afford to make a repayment. (Tr. 224). Plaintiff told the ALJ that he currently only worked part-time at Home Depot, earning $8 an hour. He also received about $800 to $1000 in disability. Plaintiff stated that all of his extra money went to support his family. (Tr. 225). However, Plaintiff admitted that he signed a statement afer he was laid off but before he began work for Home Depot that his family could afford to have $365 deducted from their current social security benefits. (Tr. 225-26). Nevertheless, Plaintiff testified that his family could not

afford repayment because they owed $7,000 on their charge card, $1,300 on their home equity loan, and had only $500 in their checking and savings account. (Tr. 227). He also stated that they were falling further into debt every month. *Id.*

The ALJ asked Plaintiff about the settlement Plaintiff's daughter received from the accident. Plaintiff stated that his daughter received $12,000 in 1994, which was invested. Thereafter, his daughter's settlement fund had increased to about $24,000 or $25,000. (Tr. 227). Plaintiff testified that they owed $3,700 to his daughter's settlement fund and they also owed about $6,500 to another family member. At the end of the hearing, the ALJ indicated that he would leave the record open for 15 days so that Plaintiff could submit an updated financial statement, which was subsequently received by the ALJ. (Tr. 209-16, 229).

The ALJ rendered a written decision on August 19, 2004. (Tr. 9-19). The ALJ determined that Plaintiff and his wife and daughter were without fault in creating the overpayments made prior to May 1998. However, he further concluded that recovery of the overpayment amounts would not be against equity or good conscience. The ALJ further determined that repayment would not deprive claimant or his family of ordinary and necessary expenses after examining various financial statements submitted by Plaintiff. (Tr. 19, 155-193, 209-16). Therefore, the ALJ denied Plaintiff's request for a waiver of the overpayments, finding that Plaintiff and his family were financially able to continue repayment at the current rate and that, if Plaintiff chose, he could repay his daughter's overpayment in full with the money in her settlement fund. *Id.* The Appeals Council denied Plaintiff's request for review on October 28,

2005 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 3-8). Plaintiff appealed the denial of his request to this Court, and both parties have filed motions for summary judgment.[3]

## III. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the

---

[3] Plaintiff, acting *in pro per*, filed with the Court various letters with attached exhibits, which the Court construes as Plaintiff's Motion for Summary Judgment.

Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently.  *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.    GENERAL LAW APPLICABLE TO RECOVERY OF OVERPAYMENT CASES

The Commissioner is authorized to recover overpayments of benefits under 42 U.S.C. § 404.  This statute provides that proper recovery "shall be made, under regulations prescribed by the Commission of Social Security", whenever the Commissioner finds that more than the correct amount of payments has been made to any person under regulations prescribed by the Commissioner.  42 U.S.C. § 404(a)(1).  The Commissioner may recover any overpayment by reducing the recipients's current social security benefits.  *Id.* at § 404(a)(1)(A).

However, the Commissioner is prohibited from recovering an overpayment when (1) the individual is without fault in the receiving the overpayment; and (2) when recovery would either defeat the purposes of the Social Security Act or would be against equity and good conscience or.  42 U.S.C. 404(b); *see Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005).  Social Security Regulations provide for a waiver when either of the two second provisions are met.  20 C.F.R. § 404.506.

The Regulations state that "recovery will defeat the purposes . . . in . . . situations where the person from whom recovery sought needs substantially all of his current income . . . to meet current ordinary and necessary living expenses."  20 C.F.R. § 404.508(b).  An individual's

financial resources and income are relevant to this determination. 20 C.F.R. § 404.508(a); *Valley*, 427 F.3d at 391.

The Regulations further provide that recovery would be against equity and good conscience where the individual "changed his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon . . . the overpayment itself." 20 C.F.R. § 404.509(a)(1).[4] An individual's financial circumstances are *not* relevant to this determination. 20 C.F.R. § 404.509(b). A claimant may show that recovery of an overpayment is against equity and good conscience where the individual "accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations thereto . . . ." 20 C.F.R. §§ 404.1520a, 404.512; *see Valley*, 427 F.3d at 392-93.

C. **ARGUMENTS**

Plaintiff argues that the ALJ erred in refusing to waive the overpayment because the ALJ overstated his financial ability to repay by improperly considering his daughter's settlement money. He also asks this Court to consider additional financial information concerning his and

---

[4] Courts in the 8th and 9th Circuits, as well as others, have disregarded 20 C.F.R. § 404.509(a) as being unreasonably narrow and contrary to legislative intent. In these Circuits, the Commissioner must instead apply a "broad concept of fairness" to waiver requests. *See Groseclose v. Bowen*, 809 F.2d 502, 505-06 (8th Cir. 1987); *Quinlivan v. Sullivan*, 916 F.2d 524, 526-27 (9th Cir. 1990). The Sixth Circuit has not adopted this reasoning in any published opinion. *But cf Adams v. Sec'y of Health & Human Srvs.*, 1989 WL 139565 ** 3-5 (6th Cir. 1989)(unpublished)(agreeing with holding in *Groseclose* and finding that recovering of overpayment form widow of payments made to her son was against equity and good conscience).

his family's ability to make a repayment. Plaintiff further contends that ALJ erred in finding that it would not be against equity and good conscience to seek recovery of the overpayment based upon Mrs. Schultz' representation. Plaintiff asks that this Court to overturn the ALJ's decision and to order the return of all the money recovered by Defendant.

### 1. Does Recovery Defeat the Purposes of the Social Security Act?

Plaintiff asserts that the ALJ overstated his financial ability to repay by improperly including his daughter's settlement money as income that could be used for repayment. Plaintiff has not challenged the ALJ's factual findings regarding his financial circumstances in any other regard.

A review of the ALJ's decision indicates that the ALJ did not determine that Plaintiff and his wife were financially able to make repayments based upon the settlement money paid to Plaintiff's daughter. Rather, the ALJ's decision clearly reflects that this money was available to repay the overpayment specifically made to Plaintiff's daughter. (Tr. 17-19). Furthermore, the record contains substantial evidence to support the ALJ's determination that these funds were available to repay the $ 11,434 overpayment made to Plaintiff's daughter. As noted by the ALJ Plaintiff reported that his daughter's settlement fund was worth $22,666 in April 2002. By March 2003 that fund had increased to $24,000 and by February 2004 it was valued at $26,624. (Tr. 18, 158, 187, 212). Additionally, Plaintiff's financial statement indicated that his daughter had $772 in a savings account. (Tr. 17, 212). The ALJ also properly noted that Plaintiff had sufficient control of the money in his daughter's settlement fund to make the repayments from

it. (Tr. 18). Plaintiff testified, and his accounting confirmed, that he had taken money out of this fund and that he could convert this fund to cash when needed.[5] (Tr. 158, 161, 187, 216, 227-28). Based upon all of this information, there was substantial evidence to support the ALJ's finding that Plaintiff could use his daughter's settlement fund to repay her overpayment.

Substantial evidence also supports the ALJ's determination that Plaintiff and his wife could afford to continue making repayments at the rate of $365 based upon their then-current financial situation. Defendant's prior determination that Plaintiff and his wife were unable to repay the overpayments made after May 1998 was based upon a financial statement submitted in April 2002. Subsequently, as noted by the ALJ, Plaintiff began to receive social security benefits based upon a new claim. Plaintiff indicated in an updated financial information statement submitted in 2003 that his income exceeded his expenses by $418 after refinancing his house. (Tr. 17, 160, 182). Plaintiff also stated in 2003 that he could afford to have $365 taken out his family's social security benefits each month. (Tr. 192).

The ALJ concluded that Plaintiff's 2004 financial statement presented a skewed picture of his family's financial situation. The ALJ noted that Plaintiff and his family were entitled to $2831 in disability benefits in 2004. (Tr. 16). However, Plaintiff had reported his family's net social security benefits in 2004 as $2300. (Tr. 213). He also stated that he owed $366 per month

---

[5] Plaintiff had originally indicated that this settlement money was a college fund for his daughter. He later recanted that statement. Furthermore, as Defendant notes, the origin of assets, or designation of assets for future use, is not relevant. *See Valley*, 427 F.3d at 392.

for an unnamed loan to an unidentified creditor. (Tr. 214). The ALJ reasoned that Plaintiff's reported income from his disability benefits already reflected the $365 deductions made toward repayment of overpaid benefits as well as a $66 Medicare premium deduction and that Plaintiff had thereafter double counted the $365 deduction by reporting it as loan expense. (Tr. 16). The ALJ ultimately concluded that under an adjusted income/expense comparison, Plaintiff's income exceeded his expenses by $120 per month in 2004.[6] (Tr. 16-17).

In addition to this available income, the ALJ observed that Plaintiff and his wife had over $2000 in their joint savings account. Furthermore, the ALJ noted that Plaintiff and his wife had discretion in adjusting certain miscellaneous expenses. (Tr. 17). Plaintiff had reported over $600 in miscellaneous expenses including pool maintenance[7], gifts, and other "unexpected" items. He also claimed over $400 in church donations and $39 to a Christian radio station as expenses. (Tr. 160, 182, 214). While "ordinary and necessary living expenses" as defined in the regulations includes "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living", 20 C.F.R. § 404.508(a)(1)-(4), it is not clear that all of these expenses were reasonably necessary. Nevertheless, it was reasonable for the ALJ to note that

---

[6] As previously noted, Plaintiff has not challenged the accuracy of the ALJ's factual findings as to this issue.

[7] Plaintiff reported that the pool was ordered in September 2002, which was after he had been given notice in 1999 that his family might be required to repay overpaid benefits and after he submitted his April 2002 indicating that his family's expenses exceeded their income and that they relied upon friends, family, and the church for financial assistance. (Tr. 169, 182).

Plaintiff and his wife had significant discretion in determining the appropriate amount of money to spend on these miscellaneous expenses in light of their financial situation. Given this evidence as a whole, the Court concludes that substantial evidence supports the ALJ's determination.

Plaintiff also asks this Court to consider new financial information as evidence to overturn the ALJ's decision. Specifically, Plaintiff presents an updated financial statement dated June 6, 2006, a summary of his alleged current debt, and information that his income will decrease in 2009 by $1,000 per month when his son moves out of the house upon his 18th birthday. (Docket # 15 at 8-12; Docket # 25 at 1).

The evidence that Plaintiff asks this Court to consider was not before the ALJ at the time he rendered his opinion in August 2004 and it was not presented to the Appeals Council prior to its decision denying review in October 2005. Consequently, the Court cannot consider this evidence in determining whether substantial evidence supports the ALJ's determination. *Cotten v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993).

The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).

The party seeking remand has the burden of showing that it is warranted. *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d 709, 711 (6th Cir. 1988) (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)).

Plaintiff has not asked for a sentence six remand and consequently he has made no attempt to meet his burden of showing that remand is warranted. Nevertheless, based upon the information before the Court, a remand would not be warranted. Even assuming that Plaintiff has established that the material is new and that he had good cause for not presenting the evidence earlier, the evidence submitted by Plaintiff is not material. The financial statement submitted by Plaintiff is part of his request to the Social Security Administration to lower the amount of money deducted each month for overpayment based upon his financial situation as of June 6, 2006. This information has no bearing upon the ALJ's determination that Plaintiff had the financial wherewithal to make repayments at the rate of $365 per month in 2004.[8] Plaintiff's

---

[8] Plaintiff indicated that he submitted this form to the Social Security Administration in June 2006. It is not known whether Plaintiff's request to reduce the amount of his monthly payments was granted. Presumably, Plaintiff would be able to appeal

summary of his outstanding debt in November 2006 and his anticipated financial situation in 2009 when his son moves out of the home is similarly irrelevant.  The Court also notes that Plaintiff's summary of his alleged overall debt in November 2006 and his prospective 2009 financial future do not provide a clear picture of his financial ability to repay in that there is no evidence before the Court indicating Plaintiff's monthly income versus debt during these time periods.

### 2.     Does Recovery Go Against Equity and Good Conscience?

Plaintiff asserts that the ALJ should have credited his statement that a social security representative named Ms. Schultz had informed him that the overpayment was her fault and that he did not need to repay it.  The ALJ found, however, that there was no objective documentation to support Plaintiff's statement.  "An ALJ must be free to disregard self-serving statements that cannot be verified . . .." *Hudson v. Bowen*, 849 F.2d 433, 434 (9th Cir. 1988); see also *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (per curiam) (same for disability benefits).  Moreover, an ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Plaintiff has not directed this

---

any decision denying his request.

Court to any evidence that would undermine the basis of the ALJ's credibility determination and, therefore, the ALJ's determination must stand.[9]

Furthermore, Plaintiff did not present any evidence to the ALJ that he or his family had "changed their position for the worse" or "relinquished a valuable right" because of any reliance upon the overpayment money. It was his burden to do so. *Pliley v. Sullivan*, 892 F.2d 35, 39 (6th Cir. 1989). Therefore, the Court finds that substantial evidence supports the ALJ's determination that recovery of the overpayments would not go against equity or good conscience.

## V. CONCLUSION

The Commissioner's decision is supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket # 22) should be **GRANTED**. Plaintiff's Motion for Summary Judgment (Docket # 1, 15, 25) should be **DENIED** and his Complaint **DISMISSED.**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections

---

[9] The record does contain a letter from Plaintiff's attorney to the Social Security Administration in which his attorney recalled a similar conversation that took place with Ms. Schultz several years earlier. (Tr. 118-21; Docket # 11, 6-8). Similarly, there is no documentation regarding such a conversation.

which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 05, 2007         s/ Mona K. Majzoub
                                  **MONA K. MAJZOUB**
                                  **UNITED STATES MAGISTRATE JUDGE**


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record and Michael Dolan on this date.

Dated: February 05, 2007         s/ Lisa C. Bartlett
                                  **Courtroom Deputy**

-18-